DON WALKENHORST, APPELLEE, v. THEODORE A. (JIM) APOLIUS, APPELLEE, THEODORE E. APOLIUS, APPELLANT, IMPLEADED WITH SECURITY STATE BANK OF MADRID, NEBRASKA, ET AL., APPELLEES.

112 N. W. 2d 31

Filed December 1, 1961. No. 35021.

*Frank B. Svoboda, Franklin D. Carroll,* and *W. C. Conover,* for appellant.

*Schroeder & Schroeder,* for appellees Merrell.

*George B. Hastings* and *Frederick E. Wanek,* for appellee Adams.

*Firmin Q. Feltz,* for appellee Riedel.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an appeal from the sustaining of an oral motion for summary judgment, the refusal to permit the amendment of the dismissal of a cross-petition to reflect the facts, and the entry of a default judgment against the appellant. The second assignment is the only one we will discuss herein.

This is an action in equity commenced by the plaintiff below, Don Walkenhorst, to foreclose a thresherman's lien on wheat grown by Theodore A. (Jim) Apolius, hereinafter referred to as Jim Apolius, a tenant on land described as the east half of Section 6, Township 12 North, Range 37 West of the 6th P.M., in Keith County, Nebraska, owned by John C. Riedel, hereinafter referred to as Riedel. Named as parties defendant were Jim Apolius; his father, Theodore E. Apolius,

hereinafter referred to as Apolius; Security State Bank of Madrid, Nebraska, hereinafter referred to as the bank; A. H. Adams, hereinafter referred to as Adams; William Merrell; Farmers Cooperative Association, hereinafter referred to as the association; Cliff Hull, doing business as the Hull Grain Company, hereinafter referred to as Hull; John C. Riedel; and 5,482.20 bushels of 1960 wheat in storage at the association and with Hull.

The petition was filed August 25, 1960. The next day the association, Hull, and Apolius filed voluntary appearances and Riedel filed an answer and cross-petition asserting a one-third interest in the wheat as the landlord. On September 22, 1961, William Merrell filed the voluntary appearance of his wife as a necessary party (the court subsequently entered an order making her a party defendant), and with her filed an answer to the petition of the plaintiff, an answer to the cross-petition of Riedel, and also filed a cross-petition. They will hereinafter be referred to as the Merrells. In the cross-petition, the Merrells alleged the execution and delivery to them of a promissory note by Jim Apolius in the amount of $1,750 secured by a first chattel mortgage on the wheat in issue. On September 22, 1960, Adams filed a separate answer to the plaintiff's petition, an answer to the cross-petition of Riedel, and a cross-petition. He admitted the interest of Riedel in one-third of the wheat; alleged that Jim Apolius had executed and delivered to him a note in the amount of $3,000 secured by a chattel mortgage on the wheat in issue; that by mistake there was a misdescription in the chattel mortgage; and requested that the mortgage be reformed and corrected.

On September 23, 1960, Apolius filed an answer and cross-petition alleging ownership of two-thirds of the wheat, being the share of Jim Apolius, by virtue of a bill of sale executed before the chattel mortgages alleged by the Merrells and Adams, and alleged further that he had given a mortgage on this wheat to the bank as

security in the amount of $3,000. On October 3, 1960, Jim Apolius filed a voluntary appearance in the matter. On October 4, 1960, plaintiff filed a reply to the answer and an answer to the cross-petition of Apolius.

On October 24, 1960, defendant Adams filed a reply to the answer of Apolius, asserting in substance that the purported bill of sale was fraudulent and void. On October 25, 1960, the Merrells filed an answer to the cross-petitions of defendant Adams and defendant Apolius, and among other things asserted that the bill of sale to Apolius was fraudulent. On November 7, 1960, defendant Apolius filed his reply to the answer of Adams, and filed his reply to the answer and his answer to the cross-petition of the defendants Merrell.

On November 16, 1960, plaintiff Walkenhorst dismissed his petition without prejudice and paid the accrued costs. On the same day there was filed the consent of defendant Apolius to the dismissal, as follows: "Comes now Theodore E. Apolius and by his attorney, Frank B. Svoboda, herewith consents to the Dismissal as filed herein by the Plaintiff, Don Walkenhorst, and herewith withdraws any Cross-Petition or Counter-Claim which might have been filed in this action on behalf of Theodore E. Apolius." This dismissal was drawn by plaintiff's attorney and, as is apparent, was signed for Apolius by his attorney.

On the 28th of November 1960, defendant Riedel filed an answer to the cross-petition of defendants Merrell. On December 6, 1960, the court entered an order setting the cause for trial on the 19th day of December 1960. On the 16th day of December 1960, the Merrells replied to the answer of Riedel. On December 19, 1960, stipulations were filed by Riedel, the Merrells, and Adams as to their rights and the priority of mortgages as to each other.

When the case was called for trial, the Merrells' attorney called attention to the stipulations. The bill of exceptions then sets forth the following proceedings:

"MR. SVOBODA: We object at this time to these stipulations between A. H. Adams and the Merrells on the grounds that the stipulation is prejudicial to my client Mr. Apolius, as it sets forth the priority of liens and does not take into consideration the bill of sale of my client.

"THE COURT: The bill of sale will be subject to whatever rights they had in the property at the time the bill of sale was made?

"MR. SVOBODA: Absolutely.

"THE COURT: I can't see that that would affect your client in any way. Overruled.

"MR. SCHROEDER: If the Court please, the Defendants and Cross-Petitioners William and Doris Merrell, move for a summary judgment and against Theodore E. Apolius on the following grounds: * * * The Defendant and Cross-Petitioner Theodore E. Apolius withdrew his Cross-Petition, which are the only pleadings that he has on file in this case. Therefore, so far as any litigatable issues are concerned as between the mortgage holders, the Merrells and Mr. Adams, there are no issues to be determined by the Court. Wherefore the Defendants William Merrell and Doris Merrell pray for a summary judgment in accordance with their prayer in the Petition.

"MR. SVOBODA: At this time I would like to amend my pleadings to conform with the actual facts, which were that I intended at this time to dismiss any action against Don Walkenhorst, as Mr. Walkenhorst was paid. I did not intend at this time to dismiss any action I had against Mr. Merrell or Mr. Adams, and so far as the pleadings was concerned, if it was an error on my part I would like to amend the pleadings to conform with the facts.

"MR. HASTINGS: In order that the record might indicate, Mr. Schroeder representing Mr. Merrell and I have joined in this motion for summary judgment, and therefore the position which Mr. Schroeder has taken

with reference to Mr. Merrell is exactly the same position that Mr. Adams, the Defendant and Cross-Petitioner takes with reference to Theodore E. Apolius. * * *

"MR. SVOBODA: I would like to state, Your Honor, that this withdrawal of the action was prepared by Don Walkenhorst's attorney and at the time I was the only one objecting to Mr. Walkenhorst being paid for his work for cutting the wheat crop on the basis that he did not completely fulfill his contract; that he did not deliver approximately 3,300 bushels of wheat to town, and that was my only objection, and because of the fact he did put up the court costs for this action. I considered the court costs to be far beyond the amount it would cost to deliver the 3,300 bushel of wheat to town; and I dismiss any action against Don Walkenhorst at this time on the Cross-Petition—I would like to amend this dismissal and further plead my action against Mr. Merrell and Mr. Adams and the elevator to turn this wheat crop over to my client Mr. Ted Apolius.

"MR. SCHROEDER: We have the plain language of the dismissal before us and the plain language says he dismissed his Cross-Petition. He has asked for leave to amend. I might comment to the Court that several weeks ago Mr. Svoboda and I were talking on the telephone and he wanted to present this matter for trial. We came from a good long distance and I assumed he would have his pleadings in such shape that he was ready for trial. I told him that I would be; and we object to any amendment at this time.

"MR. CARROLL: It seems to me that this consent to dismiss is directed only towards the Plaintiff Don Walkenhorst in this case. The attorneys for the Defendant at this particular point had interpreted this to mean that it applies to all of them. I don't think that the Court at this particular time should look entirely at the plain language of this consent to dismissal. Obviously the intention was only to withdraw any Cross-Petition or Counter-Claim against the Plaintiff Don

Walkenhorst because of the fact he was paid and already out of the action. I think the Court should take into consideration how substantially justice can be obtained in this particular case, and I submit to the Court that in no manner or no form can justice be obtained granting this motion for summary judgment. It was obviously not the intention of counsel to dismiss his Cross-Petition as to any of the other defendants.

"THE COURT: I can't understand how you can do this by a motion unless it is a motion to file a Cross-Petition. I don't see any amendments that should be made. You just dismissed it, and that is all there is to it."

The record further indicates that Apolius then asked leave to call the plaintiff's attorney who prepared the dismissal as a witness. This request was not granted. Apolius then moved for leave to amend the consent to dismissal to conform to the facts so that the dismissal would apply only to the plaintiff, Walkenhorst. The bill of exceptions then contains the following:

"MR. SCHROEDER: We would have to object to it for the record.

"THE COURT: I will have to sustain the objections and sustain the motion for judgment on the pleadings."

The only motions before the court at that time were the motion for summary judgment and the motion to amend. It is now appellees' position that the motion for summary judgment was actually a motion for judgment on the pleadings, and that the court so considered it, as indicated above.

Inasmuch as we are only discussing the refusal to permit an amendment, this point is immaterial except as it may bear on the abuse of discretion. What a pleading may be denominated in the caption is not necessarily controlling. The character of a pleading is determined by its contents. From v. Sutton, 156 Neb. 411, 56 N. W. 2d 441.

We do take occasion to note, however, that the sum-

mary judgment procedure is purely statutory. A motion for summary judgment does require compliance with all statutory requirements, and this compliance would preclude an oral motion. Further, a motion for summary judgment is not intended to take the place of a motion for judgment on the pleadings or any other procedure. As we have said in many cases, a motion for summary judgment serves a specific, limited purpose, and it is not intended to supplant other existing procedures.

We believe this situation to be one clearly covered by section 25-852, R. R. S. 1943, which provides: "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party or by correcting a mistake in the name of the party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. Whenever any proceeding taken by a party fails to conform, in any respect, to the provisions of this code, the court may permit the same to be made conformable thereto by amendment."

This court construed and applied that section in Louis Hoffman Co. v. Western Smelting & Refining Co., 150 Neb. 524, 34 N. W. 2d 889. Therein we held that: "The law of amendments should be liberally construed in order to prevent a failure of justice." In that same case we said: "Neither the statute nor any rule of court called to our attention requires a party seeking to amend a pleading to do so in any particular form or manner, nor to support his application therefor by affidavit, if the record discloses that the trial court was in some appropriate manner informed of the nature and purpose of the proposed amendment."

As early as Berrer v. Moorhead, 22 Neb. 687, 36 N.

W. 118, this court held: "The law of amendments should be liberally construed in order to prevent a failure of justice." The progressive evolution of procedure in our courts has not changed that rule, but has demonstrated the necessity of its continuing judicial application.

It is clear to us that Apolius should have been permitted, in the furtherance of justice, to amend his consent to dismissal to reflect the facts, and the court's failure to permit him to do so was an abuse of discretion and constituted prejudicial error. The issues would not have been changed. The suggested amendment would merely have reinstated the very issues the parties had expected to litigate. The trial would not have been delayed. All the parties were before the court. The appellees were well aware that Apolius was not abandoning his claim under the bill of sale and apparently expected to proceed with the litigation when they appeared for trial. They certainly had no reason to expect Apolius to dismiss the cross-petition as to them and could not help but understand it to be an obvious error on his part to fail to restrict it to the plaintiff. It does not appear that the appellees' rights would have been prejudiced in any manner by permitting Apolius to amend as requested. On the other hand, the refusal by an equity court to correct the obvious, arbitrarily and erroneously deprived Apolius of a substantial right. There can be no question but that the intention of Apolius was only to dismiss as to the plaintiff. If plaintiff's attorney, who drew the consent to dismissal, had been permitted to testify, this undoubtedly would have been even more apparent.

In view of our holding herein, it is unnecessary to discuss the other points referred to by the parties. We are convinced that they will not be repeated on a trial on the merits. We hold that it was an abuse of judicial discretion for the trial court to refuse to permit Apolius to amend his consent to dismissal to restrict it to the plaintiff's action. It follows that the default

judgment entered against him should have been vacated and the case should have been adjudicated on its merits.

For the reasons set out above, the judgment of the trial court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.