JOHN WISNIESKI, APPELLANT AND CROSS-APPELLEE, V. ERNEST L. COUFAL ET AL., APPELLEES AND CROSS-APPELLANTS.
216 N. W. 2d 736

Filed April 4, 1974. No. 39244.

Homer E. Hurt, Jr., and James A. Gallant, for appellant.

Otradovsky & Bieber, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MC-COWN, NEWTON, and CLINTON, JJ., and BUCKLEY, District Judge.

WHITE, C. J.

This is an action by plaintiff, a real estate broker, to recover from the defendants, owners of a farm, a broker's commission under the terms of a listing contract. The jury returned a verdict for the defendant

owners. This appeal follows. We affirm the judgment of the District Court.

This case was previously before this court on an appeal from a directed verdict for the defendants. Wisnieski v. Coufal, 188 Neb. 200, 195 N. W. 2d 750 (1972). We reversed and remanded, holding that under section 36-107, R. R. S. 1943, the terms of a sale need not be included in a listing contract for the sale of land, but may be supplied by parol evidence. A listing contract must be in writing, signed by both parties, describe the land to be sold, and state the compensation. Wisnieski v. Coufal, *supra*.

At the second trial, the plaintiff claimed that the defendants executed a written listing contract offering to sell their farm on terms partially set forth in the listing agreement and partially set forth by oral agreement of the parties. The listing agreement gave the broker exclusive right to sell a described 120 acres until a specified date for the sum of $400 per acre. The broker's commission under the written listing agreement was 5 percent.

In attempting to establish the terms of the sale by parol, in accordance with our earlier decision in this case, the plaintiff testified that the defendants had orally agreed to sell the land upon the following terms: $8,000 down, an annual payment of $1,800 for 9 years, 5 percent interest per year on the principal balance, with the balance due at the end of the 10-year period.

The plaintiff claims that he fully performed the terms and conditions of the agreement by supplying four willing purchasers upon these terms. He claims that the first three buyers were objected to by the defendants solely because of inadequacy of their financial condition and that the defendants agreed and knew that all three purchasers were only asked to pay $8,000 down. Plaintiff strongly urges that the defendants at all times indicated that an $8,000 downpayment was sufficient.

The defendants say they were only told to check the financial condition of the first three prospective buyers and that they never knew that the broker was only asking for an $8,000 downpayment until the fourth buyer was presented.

The plaintiff and defendants apparently agreed that the defendants could refuse to accept a buyer if his financial condition was unsatisfactory. The plaintiff did not ask for his commission after any of the first three buyers were refused.

The defendants' testimony would indicate that the first time they knew the broker was only asking for an $8,000 downpayment was upon presentment of the purchase agreement of the fourth prospective buyer. The defendants testified that they always made it clear that a 29 percent downpayment was necessary.

The defendants contend that they agreed orally to sell their land upon the following terms: 29 percent down, consisting of $8,000 at the signing of the purchase agreement and the balance of the 29 percent upon possession, annual payments for 5 years, 5 percent interest per year on the principal balance, with the balance due at the end of 5 years. After the fourth buyer was rejected on the basis of insufficiency of the downpayment, rather than financial condition, the broker asked for his commission. The defendants refused to convey the land and the commission has never been paid.

Thus, the evidence presented a conflict as to whether the parties orally agreed to an $8,000 downpayment, or a 29 percent downpayment. This factual question for the jury was crucial to a decision upon the issue of whether the broker had fulfilled his obligations under the listing agreement and was entitled to his commission. The jury resolved this issue in favor of the defendants.

The broker complains that the trial court committed error by: (1) Allowing an attorney, testifying as a

witness, to assert the attorney-client privilege, (2) allowing defense counsel to engage in misconduct, and (3) allowing the defendants to amend their answer and file a counterclaim at the beginning of the second trial. The defendants cross-appeal alleging error in refusal to submit their counterclaim to the jury.

One of the defendants testified on direct examination that they had consulted two attorneys and received advice to sell their land on contract with a 29 percent downpayment. There was vigorous cross-examination by plaintiff's counsel on this testimony. After the trial court allowed the plaintiff to reopen his case, the plaintiff called as a witness one of the attorneys who had given the advice to the defendants. When the attorney was asked if he had given tax advice concerning the sale of the farm to the defendants on a previous occasion, the witness claimed the attorney-client privilege. Plaintiff's counsel asked for a ruling and the trial court ruled that the attorney-client privilege was properly invoked and had not been waived. Plaintiff's counsel never objected to the ruling, nor did he anywhere during the trial, or prior to the motion for new trial, assert that there had been a waiver of the privilege previously at the trial. Most importantly, however, plaintiff's counsel never made any offer of proof as to the content of the excluded testimony. The action of the trial court in excluding testimony of a witness during his direct examination may not be reviewed on appeal in the absence of an offer to prove what it is claimed the testimony would show. Cook v. Ketchmark, 174 Neb. 222, 117 N. W. 2d 375 (1962). Finally, the attorney did testify that as a general rule he recommended a 25 percent downpayment upon a contract sale of land. He additionally stated that a seller could demand 29 percent down, but that you have to be exceedingly careful for tax purposes. In view of this testimony, even if the exclusion of the attorney's testimony was improper,

it appears that it could not have been prejudicial. Either 25 or 29 percent was substantially more than the $8,000 downpayment contended for by the plaintiff. But, the absence of an offer of proof to the excluded testimony is dispositive of this issue.

Plaintiff contends that the defense counsel's conduct should be a ground for a new trial. Many of the objections to testimony raised by the plaintiff's counsel were sustained, so any error could not be prejudicial. Plaintiff's counsel never asked that the answers be stricken from the record, nor asked for a mistrial. A party may not complain of misconduct of counsel if, with knowledge of such misconduct, he does not ask for a mistrial, but consents to take the chance of a favorable verdict. Johnson v. Nathan, 161 Neb. 399, 73 N. W. 2d 398 (1955).

Lastly, plaintiff claims the court erred by allowing the defendants to amend their answer and file a counterclaim at the beginning of the second trial. Upon a reversal by this court for a new trial, it is within the discretion of the trial court to allow amendments to the pleadings. Here there was no abuse of that discretion. Louis Hoffman Co. v. Western Smelting & Refining Co., 150 Neb. 524, 34 N. W. 2d 889 (1948); Walkenhorst v. Apolius, 172 Neb. 830, 112 N. W. 2d 31 (1961).

The defendants contend that the trial court incorrectly did not submit their counterclaim to the jury. The substance of the counterclaim alleged that the broker was negligent in drafting the listing agreement. Upon a review of the evidence we are unable to find any testimony which would support the conclusion that the broker was negligent. The issue in the case was the terms of the agreement. The ruling of the trial court is correct.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.